IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM E. HEWITT, II, | |
| Plaintiff, | 4:07CV3151 |
| v. | |
| SOCIAL SECURITY ADMINISTRATION, Michael J. Astrue, Commissioner, | MEMORANDUM AND ORDER |
| Defendant. | |

William E. Hewitt II ("Hewitt") filed for Social Security Disability Insurance Benefits under Title II and Part A of Title XVIII of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act on October 16, 2002[1]. Filing No. 11, Transcript (hereinafter "Tr.") at 119-121; 654-656.[2] On both applications, Hewitt indicated a disability onset date of May 30, 1998. Tr. 119-121; 654-656. According to Hewitt's brief, "He amended his onset date to September 28, 2002, which is reflected in the Interrogatories found at Exhibit E (T248-255)." Filing No. 23 at 3.

On January 16, 2003, the Social Security Administration ("SSA") denied Hewitt's claims for Social Security Disability Insurance and Supplemental Security Income. Tr. 82-4. The SSA denied Hewitt's claims because "drug addiction and/or alcoholism was a contributing factor material to a finding of disability." Tr. 82. On March 17, 2003, Hewitt filed a request for reconsideration, and the SSA affirmed the initial decision. Tr. 85-91.

---

[1] Hewitt filled out the applications October 14, 2002, but they were not received until October 16, 2002. Tr. 119-121; 654-656.

[2] The record is missing the second page of the Supplemental Security Income application at page 655.

Hewitt filed a request for a hearing with an Administrative Law Judge ("ALJ") on September 8, 2003.[3] Tr. 92-93. The hearing commenced on February 8, 2005.[4] Tr. 52-56. The ALJ rendered his decision on March 3, 2006, which denied Hewitt's claims for Social Security benefits.[5] Tr. 15-30. The ALJ found, "If the claimant stopped substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))." *Id.* at 20.

On April 7, 2006, Hewitt filed a request for review of hearing decision/order. Tr. 13. On April 30, 2007, the SSA denied Hewitt's request for review because the SSA found no reason under the rules to review the ALJ's decision. Tr. 8-10. Thus, Hewitt initiated this action.

**Background**

Hewitt was born on November 19, 1958. Tr. 668. Hewitt was 46 years old at the time of his initial hearing with the ALJ on February 8, 2005. Tr. 668. In Hewitt's "Disability Report Adult" he stated, "my right hip and back are damaged to where I am in constant severe pain in addition to being diagnosed as a paranoid schizophrenic with psychotic tendencies and depression" as his illnesses, conditions or injuries that limits his ability to

---

[3]Hewitt's counsel, Mary Stoughton Wenzl ("Wenzl"), signed the request for the hearing by an ALJ on August 28, 2003. Tr. 92.

[4]Two subsequent supplemental hearings were held due to insufficient time in the initial hearing. The supplemental hearings took place on April 21, 2005, and October 14, 2005. Tr 704-719; 720-753.

[5]The ALJ appears to have used multiple onset dates with regard to Hewitt. *See* the letter "M" where the date should have been located, Tr. 16; *see also* Tr. 29, #10. The court recognizes that both parties believe the ALJ reviewed Hewitt's case from the May 30, 1998, onset date instead of the amended date of September 28, 2002. Filing No. 23 at 10, Filing No. 31 at 15, Tr. 248. This court agrees with the parties that September 28, 2002, is the alleged onset date, but the court finds that any error by the ALJ in this regard is not material, since evidence prior to that date will be considered as it relates to Hewitt's illness.

work. Tr. 183.  Hewitt received a Bachelor's Degree at the University of Wisconsin-Stout in 1987.[6]  Tr. 378.

Hewitt's treating physician, Dr. Dianna Clyne ("Dr. Clyne"), reported, "The patient (Hewitt) has seen a psychiatrist in the past and in 1998 was started on Risperdal and Paxil. Tr. 431.  Further, Hewitt mentioned to Dr. Clyne that ". . . he has been depressed and life has been the 'pits' ever since his divorce in 1992." *Id.*  According to Dr. Clyne, "He (Hewitt) has tried all of the drugs except for IV.  He has not tried heroin.  His drug of choice is marijuana." *Id.*

Hewitt claims in high school he watched the movie "The Omen."  Tr. 436.  In "The Omen" there are references to the number "666." *Id.*  As a practical joke, Hewitt placed a "666" decal on his car and was contacted by the Lincoln newspaper.  *Id.*  Hewitt claims as a result, an article was published which referred to him as "The Devil."  *Id.*  According to Dr. Clyne, "The client (Hewitt) stated that since that time he was a 'marked man' and people have been 'after him.'"  *Id.*  Dr. Clyne found, "He (Hewitt) is delusional regarding this omen phenomenon.  It is a very fixed delusion.  He is unable to shake it and this has continued to be a habit for him."  Tr. 431.

On September 13, 1999, Hewitt claims his Hy-Vee supervisor started calling him "666."  Tr. 437.  Later that day, he began drinking alcohol and smoking marijuana.  *Id.*  The next morning, September 14, 1999, Hewitt went outside and started screaming.  *Id.*  According to Hewitt, police officers, firefighters and the mayor approached him.  *Id.*  Hewitt further claims that "he was beaten with clubs and scuffled with the mayor."  *Id.*  William

---

[6] Hewitt testified, "My major is Bachelor Science and Industrial Technology, [INAUDIBLE] Management.  Tr. 668.

Hewitt, Sr. ("Hewitt Sr."), Hewitt's father, conducted an independent investigation with the help of his friend, the local police chief. Tr. 700. Hewitt Sr., with the help of the police chief, found no evidence that police officers were even present at Hewitt's house on September 14, 1999. *Id.* Hewitt, on the other hand, believes this event has been covered up due to a conspiracy against him. Tr. 437.

On October 7, 2002, Hewitt was committed to the Partial Hospitalization Program "after a stay at the Crisis Center following a psychiatric evaluation while the client was still in jail. William (Hewitt) had been lodged on September 27 for two counts of violating a protection order against his former wife." Tr. 451. Dr. Clyne diagnosed Hewitt as possessing paranoid delusional disorder, alcohol abuse and cannabis abuse. *Id.* In an April 2004 interview, Dr. Clyne diagnosed Hewitt as being schizophrenic. Tr. 483. On April 21, 2005, Hewitt testified that, "I think Dr. Cline (sic) knows the severity of my mental conditions very well." Tr. 729.

On February 4, 2005, LauraLee Clinchard ("Clinchard"), a licensed mental health practitioner who had treated Hewitt since September of 2004,[7]

> . . . observed episodes of deterioration which seem to correlate with stressors occurring in his life. . . . During these episodes his persecutory delusions become quite prominent, his self esteem plummets, he expresses suicidal ideation, and is unable to utilize cognitive behavioral skills he has learned . . . my professional opinion regarding a prognosis for complete recovery within 12 months is poor.

Tr. 525-526. Further, Michelle Lemon ("Lemon"), RN, MSN, APRN-BC, Hewitt's current treating practitioner as of April 19, 2005, found,

---

[7]Clinchard reported, "I saw Mr. Hewitt twice during the fall of 2003, and he resumed fairly regular sessions with me, approximately every three weeks, on 24 March 2004. I last saw him on 12 January 2005." Tr. 525.

4

> William (Hewitt) has a severe and persistent mental illness and has been diagnosed with Paranoid type Schizophrenia and he has a history of drug dependence. . . . William has a fixed delusional system and remains paranoid although I have tried to aggressively treat his symptoms with medication. My prognosis for a complete recovery within 12 months is poor and it is my opinion that he cannot be employed at this time.

Tr. 572.

Hewitt testified at all three ALJ hearings. Tr. 668-696, 707-710,[8] 723-732. Hewitt described his symptoms as, "I'm paranoid of everyone. I feel like everyone is out to get me, I feel that I'm a bad person, that evil was following me, I was born faithed to be like this." Tr. 672. When asked about whether Hewitt was aware of his delusions, Hewitt testified, ". . . they call it delusional, but to me it's real." *Id.* Hewitt Sr. testified that he believes his son's symptoms are very severe. Tr. 699.

In regard to Hewitt's ability to work, Hewitt Sr. testified, "For 41 years I was vice present (sic) and general counsel of one of the largest businesses corporation in Lincoln. . . . I hired all kinds of people and I do not think he is capable of holding a job for any protracted period of time." Tr. 698.

**Legal Standard**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering his

---

[8] This hearing is actually the last supplemental hearing which took place on October, 14, 2005, but is placed in the transcript as if it were the second hearing.

age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Further, "An individual shall not be considered to be disabled for purposes of the subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

Using this analysis, the ALJ concluded Hewitt was disabled but "substance use disorder(s) is a contributing factor material to the determination of disability." Tr. 17. Thus, Hewitt is not disabled under the Social Security Act, and, hence not eligible for benefits. *Id.* The ALJ found that Hewitt, "has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b))." Tr. 19. In addition, the ALJ found Hewitt has, ". . . polysubstance abuse documented through January 2005 as

6

well as mental impairments including diagnoses of dysthymic disorder; depression; delusional disorder, persecutory type; paranoid delusional disorder; schizonphrenia, paranoid type, schizoaffective disorder and personality disorder, NOS (20 CFR 404.1520(c) and 416.92(c))." Tr. 19.  The ALJ found Hewitt's assertions of pain ". . . do not meet or medically equal the severity of any of the impairments found within the Listing of Impairments."  *Id.*  Further the ALJ found, "If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))."  Tr. 20.

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995).  Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990).  "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's conclusion."  *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the [Commissioner's] decision as well as evidence that supports it."  *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  If the

court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

Residual functional capacity ("RFC") is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. Soc. Sec. Rul. 96-8p. RFC is what an individual can still do despite his impairments and the resulting limitations. *Id.* at 2. While the RFC is a medical question, *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), RFC is not based solely on "medical" evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations). Here, the ALJ found,

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform work requiring simple, routine and repetitive tasks which involve lifting 50 pounds occasionally and 25 pounds frequently; standing and/or walking 6 hours in a 8-workday with normal breaks; performing postural maneuvers including bending, stooping, squatting, crawling, kneeling and climbing stairs and ladders on a frequent basis.

Tr. 26.

Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the

opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan v. Apfel*, 239 F.3d at 961. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

In this case the ALJ found Hewitt not disabled because of his substance/alcohol use. "Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. The burden of proving that alcoholism was not a contributing factor material to a disability determination falls on the social security disability claimant." *Brueggeman, v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003). "A claimant . . . may show that alcohol abuse is not a material factor to her disability if she would still be disabled if she stopped using alcohol, 20 C.F.R. § 416.935(b)." *Vester v. Barnhart*, 416 F.3d 886, 892 (8th Cir. 2005).

**Analysis**

    **Treating Physician**

The court agrees with the ALJ's finding that Hewitt is disabled but disagrees with the invalidation of his disability due to Hewitt's substance use. As mentioned above, a treating physician, is given "controlling weight" if certain conditions are met. *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The

court determines that Dr. Clyne's findings are compelling, coupled with similar findings from Clinchard and Lemon. Thus, the ALJ should have found Hewitt entitled to disability benefits.

On July 22, 2005, Dr. Clyne sent a letter to Hewitt's attorney. Tr. 591. In that letter Dr. Clyne diagnosed Hewitt with delusional disorder-persecutory type, alcohol dependence, cannabis dependence under Axis I and personality disorder and NOS under Axis II. *Id.* In addition, Dr. Clyne found that Hewitt had chronic hip and back pain under Axis III. *Id.* Dr. Clyne also stated that Hewitt seemed to be honest in regard to his substance use. *Id.*

In the ALJ's opinion the ALJ found, . . . the claimant had never demonstrated sobriety during the treatment history (Ex 39F)." Tr. 25. The ALJ's finding is based on "Exhibit 39F" which was dated March 10, 2005.[9] Tr. 542-543. In a letter Dr. Clyne sent to Hewitt's attorney, Dr. Clyne stated,

> Mr. Hewitt seemed to have very few periods of sobriety. His reporting of dates, times, and frequency of relapse differ at times when comparing CenterPointe to Lutheran Family Services' evaluations, but the overall conclusion seems to indicate that ongoing use of substances with brief periods of sobriety. It should be noted that client did maintain extensive sobriety during his time on probation starting in December of 2002 and continuing through July 2003. Client self reported no marijuana use during this time on probation. Psychiatric notes also indicate on going delusional thinking even during these times of sobriety.

Tr. 591-592.[10]

---

[9] In "Exhibit 39," Dr. Clyne was asked whether the claimant maintained a period of sobriety for longer than a month and was the claimant still "disabled due to mental health issues." Tr. 543. Dr. Clyne replied, "No he has continued to use cannabis consistently while I was treating him." *Id.*

[10] The statement that Hewitt maintained sobriety is somewhat inconsistent with "Exhibit 39F" with regard to substance use, but the diagnosis remained the same.

Dr. Clyne's "psychiatric notes" support this conclusion. On January 16, 2003, Dr. Clyne recorded that "He (Hewitt) remains very delusional and angry." Tr. 621. On February 27, 2003, Dr. Clyne stated that "He (Hewitt) remains somewhat delusional when talking about September 14, 1999. . . . He states he is going to narc on the people he believes stole his phone as well as his reputation . . . he remains suspicious, remains somewhat delusional, talks about the devil and revelations." Tr. 619. On March 27, 2003, Dr. Clyne writes that "He continues having fixed delusions regarding the Mayor and other high people in the city." Tr. 618. All of these findings in Dr. Clyne's "psychiatric notes" took place while Hewitt was sober from substance use. Thus, the record does not support the ALJ's finding that Hewitt's substance use is a contributing factor material to Hewitt's disability. Tr. 17. Hewitt's treating physician found that Hewitt would remain disabled without the substance use. Tr. 543. Further, Hewitt has been prescribed Seroquel, Abilify, Trileptal, and Zyprexa for his mental health issues. Tr. 605. Further, the court finds that Hewitt has met his burden of showing that alcohol/substance abuse are not material factors in his disability, and in fact, the overwhelming evidence supports his claim of disability absent the alcohol/substance abuse issues. *See Vester*, 416 F.3d at 892.

In accordance with the facts as set forth herein, it is apparent the ALJ's finding is not supported by substantial evidence in the record as a whole. The court finds the record supports Dr. Clyne's conclusion that Hewitt is disabled, as does the testimony of Hewitt and Hewitt Sr. Again, Dr. Clyne stated that Hewitt would remain disabled if he quit using substances. Tr. 543. Thus, the court finds Hewitt is disabled within the meaning of the Social Security Act and is entitled to benefits. "[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary." *Gavin v. Heckler*,

811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Iowa 2000).  The court determines that the record overwhelmingly supports a finding of disability.  Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

THEREFORE, IT IS ORDERED that the ALJ's determination is reversed.  The court orders this case remanded for a determination of benefits.  A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 16th day of July, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge